UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RANJIT SINGH, and
DHARMENDER SINGH,
on their own behalf and on behalf of others similarly
situated

                     Plaintiffs,

       -against-

ALL EMPIRE BUILDING CONTRACTORS, INC.;
HARJINDER SINGH
      a/k/a Tony Singh

                    Defendants.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 20-2736 (DRH)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court, on referral from the Honorable Denis R. Hurley for Report and

Recommendation, are Plaintiffs' motions for default judgment, pursuant to Federal Rule of Civil

Procedure 55, (Docket Entry ("DE") [19]), and for attorney's fees.  (DE [14].)  By way of a

Complaint filed on June 19, 2020, Plaintiffs commenced this action against Defendants All

Empire Building Contractors, Inc. ("All Empire") and Harjinder Singh, also known as Tony

Singh, ("Tony Singh") (collectively, "Defendants"), pursuant to the Fair Labor Standards Act, 29

U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"), alleging that

Defendants failed to pay them overtime compensation for all hours worked in excess of forty

hours per week, failed to provide them with meal periods, failed to maintain accurate records,

failed to provide them with a wage notice at the time of hiring, and failed to provide them with

accurate and complete wage statements.  (Compl., DE [1].)  Defendants did not answer or

otherwise move with respect to the Complaint.

1

Thereafter, the Clerk of the Court entered a notation of default against Defendants on November 12, 2020.  (DE [11].)  On December 5, 2020, Plaintiffs filed the within motions for default judgment and for attorney's fees, (DE [12], [14]), which Judge Hurley referred to this Court for a recommendation as to whether they should be granted and the appropriate amount of damages, costs and fees, if any, to be awarded.  (Order of Hurley, J., dated Dec. 7, 2020.)  For the following reasons, this Court respectfully recommends that Plaintiff's motion for default judgment be granted, that their motion for attorney's fees be granted in part and denied in part, and that damages be awarded as set forth herein.

<u>BACKGROUND</u>

Plaintiffs, Ranjit Singh ("Ranjit") and Dharmender Singh ("Darmender"), were employed by Defendants as drivers and construction workers from approximately January 14, 2019 to February 15, 2019.  (Compl. ¶¶ 7-8; Darmender Decl. ¶ 9; Ranjit Decl. ¶ 9.)  Defendant All Empire is a domestic business engaged in interstate commerce with gross sales in excess of five hundred thousand dollars per year.  (Compl. ¶¶ 9-10.)  Defendant Tony Singh is the Chief Executive Officer of All Empire and was known as "Boss" to Plaintiffs.  (Compl. ¶ 13; Darmender Decl. ¶ 5; Ranjit Decl. ¶ 5.)  Tony Singh had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment for employees, and maintained employee records at All Empire.  (Compl. ¶ 13; Darmender Decl. ¶ 6; Ranjit Decl. ¶ 6.)

From approximately January 14, 2019 to February 15, 2019, Plaintiffs worked three days a week for nine hours per day, and four days per week for twelve hours per day, without any breaks, for a total of seventy-five hours per week.  (Darmender Decl. ¶¶ 11-13; Ranjit Decl. ¶¶ 11-13.)  Plaintiffs were not provided any days off during this time.  (Compl. ¶¶ 27, 42;

Darmender Decl. ¶ 13; Ranjit Decl. ¶ 13.)  Nor were they provided a fixed time for lunch during their employment.  (Compl. ¶¶ 29, 44; Darmender Decl. ¶ 16; Ranjit Decl. ¶ 16.)  Rather, Plaintiffs were only afforded fifteen minutes to eat their lunch during their workdays.  (Compl. ¶¶ 30, 45; Darmender Decl. ¶ 17; Ranjit Decl. ¶ 17.)

During their employment, Plaintiffs were promised an hourly wage of twenty-five dollars per hour.  (Compl. ¶¶ 31, 46; Darmender Decl. ¶ 18; Ranjit Decl. ¶ 18.)  However, rather than being compensated for all hours worked, Plaintiffs were paid a flat rate of $200 per day, for eight hours of work.  (Compl. ¶¶ 33, 48; Darmender Decl. ¶ 19; Ranjit Decl. ¶ 19.)  Plaintiffs were not paid any overtime compensation.  (Compl. ¶¶ 34, 49; Darmender Decl. ¶ 21; Ranjit Decl. ¶ 21.)

In addition, Plaintiffs were not even paid their daily rate of $200 per day.  (Compl. ¶¶ 35, 50; Darmender Decl. ¶ 22; Ranjit Decl. ¶ 22.)  Rather, Darmender was only paid $500 for the entire period of January 14, 2019 to February 15, 2019 and Ranjit was only paid $800 for the same time period.  (Compl. ¶¶ 36, 51; Darmender Decl. ¶ 23; Ranjit Decl. ¶ 23.)

Defendants did not provide Plaintiffs with a notice and acknowledgement of their wage rates upon his hire.  (Compl. ¶¶ 38, 53.)  Similarly, Defendants did not provide Plaintiffs with accurate wage statements each pay period.  (Compl. ¶¶ 38, 53.)

Plaintiffs commenced the within action on June 19, 2020, alleging violations of the FLSA and the NYLL.  Plaintiffs seek unpaid wages as well as unpaid overtime compensation pursuant to both statutes.  Plaintiffs also asserts claims pursuant to Sections 195(1) and 195(3) of the NYLL for Defendants' failure to provide them with written wage notices and written wage statements, as required by the statute.  Finally, Plaintiffs assert claims for failure to provide them with meal periods and failure to maintain records, as required by the NYLL.  Plaintiffs seek damages in the amount of $58,605.68, (Am. Damages Calculation, annexed to Schweitzer Decl.

at Ex. 1, DE [23-1]), as well as attorney's fees in the amount of $24,466.50 and costs in the amount of $684.19, for a total damages application of $83,736.87.[1]

Defendants were served with a copy of the Summons and Complaint on August 8, 2020. (DE [8], [9].)  Neither Defendant has appeared in this action to date.

DISCUSSION

I.      Legal Standard

      A.      Standard for Entering a Judgment of Default

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process before entering a judgment of default against a party that fails to respond or defend.  See Fed. R. Civ. P. 55; see also Romero v. Floris Constr., Inc., No. 1:16-CV-4282, 2017 WL 5592681, at *2 (E.D.N.Y. Nov. 20, 2017).  First, the party seeking a judgment of default must ascertain a certificate of default from the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  After the Clerk issues a certificate, the moving party then requests entry of a judgment of default.  See id. at 55(b); see also Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565, 2018 WL 1513628, at *2 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018).  All of the well-pleaded factual allegations in the complaint pertaining to liability are deemed to be true.  See Qiu Hua Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *2 (E.D.N.Y. May 25, 2017) (citing Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (E.D.N.Y. 1992)).  However, it is up to the court to determine whether the unchallenged facts constitute a

---

[1] Following a telephone conference with the Court on June 8, 2021, Plaintiffs' counsel was afforded leave to file an amended damages calculation, as well as a revised application for attorneys' fees.  While Plaintiffs filed an amended damages calculation on June 22, 2021, they have opted not to revise their application for attorney's fees and costs.

legitimate cause of action.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

B.      Standard Required Under the FLSA

In order to establish liability under the FLSA, the plaintiff must prove either individual liability or enterprise liability.  See Leon v. Chen, No. 16-CV-480, 2017 WL 1184149, at *4 (E.D.N.Y. Mar. 29, 2017).  Individual liability applies to any individual "engaged directly in interstate commerce or in the production of goods for interstate commerce."  Coley, 2018 WL 1513628, at *3 (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8 (1985)).  On the other hand, enterprise liability applies to entities that: "(1) perform related activities "for a common business purpose"; (2) have "employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (3) have an "annual gross volume of sales made or business done [ ] not less than $500,000."  Coley, 2018 WL 1513628, at *3 (quoting 29 U.S.C. § 203(r)–(s)) (alteration in original).

An employee is "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  Here, Plaintiffs demonstrates this by alleging in their Complaint that they were employed by Defendants.  See Garcia v. Badyna, No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (stating that since plaintiff alleged in his complaint that he is an employee as defined by the FLSA, for purposes of the default, he qualifies as an employee); see also Compl. ¶¶ 12, 18.

Furthermore, Plaintiffs have shown in the Complaint that All Empire is an enterprise engaged in interstate commerce and has employees handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce.  See 29 U.S.C. §

203(s)(1)(A)(i)-(ii); see also Compl. ¶ 11.  Plaintiff has also alleged in the Complaint that the All Empire has an annual gross revenue of at least $500,000.  See Compl. ¶ 10.

Moreover, Tony Singh is an employer under the FLSA.  An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a).  The Second Circuit has employed a multifactor test in determining whether one qualifies as an employer for purposes of liability.  See Coley, 2018 WL 1513628, at *4.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)).  In this case, Tony Singh hired and fired employees, set work schedules, and determined the rate of payment.  See Compl. ¶¶ 13-15.  As a result, Tony Singh is deemed to be an employer under the FSLA.

C.    Standard Required Under the NYLL

The NYLL "is the state analogue to the federal FLSA," and, as such, it "echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements." Rodriguez v. Ridge Pizza Inc., No. CV 16-0254, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (quoting D'Arpa v. Runway Towing Corp., No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013)).  As a result, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations.  See Guardado v. 13 Wall St., Inc., No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), adopted by, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016).  Therefore, since Plaintiffs are considered employees and Defendants are considered employers under the FLSA, they are also deemed to be so under the NYLL.

Additionally, the NYLL requires that an employer furnish each employee with a notice

and acknowledgement of his or her wage rate upon hire, see N.Y. Labor Law § 195(1), as well as an accurate wage statement setting forth the hours worked, rate of pay, and total hours worked each pay period.  See N.Y. Labor Law § 195(3).  Plaintiffs proffer that Defendants failed to provide this information.  See Compl. ¶¶ 27-28.  For this reason, Plaintiffs have alleged violations of Sections 195(1) and 195(3) of the NYLL.

II.     Damages

        A.      Standard Applicable to a Damages Award Following Default Judgment

                Unlike allegations pertaining to liability and proximate cause, allegations set forth in connection with damages are not deemed admitted on account of a defendant's default.  See, e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Olvera v. Los Taquitos Del Tio Inc., No. 15 Civ. 1262, 2015 WL 3650238, *1 (E.D.N.Y. June 11, 2015); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364, at *2 (E.D.N.Y. June 9, 2015).  Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement to damages to a "reasonable certainty."  Olvera, 2015 WL 3620364, at *1.  Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes."  Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).  While the party seeking damages is entitled to all reasonable inferences from the evidence it offers, a court must "ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded."  Avelar v. Quiros, Inc., No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981)).

The court determining damages has the discretion to hold an evidentiary hearing.  See Fed. R. Civ. P. 55(b)(2); see also Castellanos v. Deli Casagrande Corp., No. CV 11-245, 2013 WL 1207058, at *3 (E.D.N.Y. Mar. 7, 2013), adopted by, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013).  Such a hearing is not required, however, so long as documents submitted, such as detailed affidavits, allow the court to conduct an inquiry sufficient to establish damages to a reasonable certainty.  See Avelar, 2015 WL 1247102, at *7.  Where there has been a default in a case alleging wage violations, the plaintiff's recollection and estimation of the hours worked are presumed correct and are often sufficient to support a damages award.  See e.g., Rodriguez, 784 F. Supp. 2d at 126; Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008).

B.     Regular and Overtime Wages

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, [and/] or their unpaid overtime compensation." 29 U.S.C. § 216(b).  Like the FLSA, the NYLL provides that an employee is entitled to recover unpaid minimum wages and overtime.  See 12 N.Y.C.R.R. §§ 142-2.2-2.4.

Pursuant to the FLSA, the regular rate of pay is "computed by dividing the salary by the number of hours in which the salary is intended to compensate." 29 C.F.R. §§ 778.113.  There is a rebuttable presumption that plaintiff's salary is intended to compensate for a forty-hour workweek.  See, e.g., Luigi's Dolceria, Inc. v. Di Rosa, No. 14-cv-871, 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016)  To overcome this presumption, there must be "an explicit understanding between the employer and employee" that the weekly salary covers both regular

and overtime pay.  Amaya v. Superior Tile and Granite Corp., No. 10 Civ. 4525, 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).

Unpaid overtime wages are calculated by multiplying the wage rate by 0.5 to determine the amount owed per hour for every hour over forty hours worked.  See 29 U.S.C. § 207(a)(1). That amount is then multiplied by the number of hours of overtime worked per week to yield a sum of weeks of overtime pay owed.  The totals for each week are then aggregated to calculate the total amount of overtime wages owed.  See Mendez v. Casa Blanca Flowers, Ltd., No. 12-CV-5786, 2014 WL 4258943, at * 3 (E.D.N.Y. July 8, 2014), adopted by, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014).  "Even when wages exceed the minimum prescribed by Congress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]."  Avelar, 2015 WL 1247102, at *5 (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944)) (alterations in original).

While both the federal and state statutory schemes place the burden of showing hours worked on the employee, see Avelar, 2015 WL 1247102, at *6, the employer is charged with maintaining accurate records of an employee's hours.  See Guaman, 2015 WL 362036, at *7. When the employer's records are inadequate, an employee may meet his burden of showing hours worked by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

C.    Liquidated Damages

Both federal and New York state law provide for enhanced damages equivalent to 100% of the total amount of the wages found to be due.  As to such enhanced damages, federal

law places the burden of establishing that liquidated damages should not be awarded on the employer.  See Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir.1997). Under state law, willfulness is established where employers voluntarily underpay employees. See Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002).  These standards have been recognized to be essentially the same.  See id.  Where, as here, the employer defaults, an award of liquidated damages is appropriate.  See Guaman, 2015 WL 3620364, at *10.

       D.    Wage Theft Prevention Act Damages

       Under the NYLL, employers are required to furnish their employees with a notice and acknowledgement of the employee's wage rate at the time of hire.  See N.Y. Labor Law § 195(1).  Employers are also required to furnish their employees with accurate, specifically enumerated wage statements each pay period.  See N.Y. Lab. Law § 195(3).  Plaintiffs seek to recover damages for Defendants' failure to provide accurate wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA").  As Plaintiffs' assert they were never given a proper wage notice or a proper wage statement during the course of his employment, they are entitled to WTPA damages.

       E.    Facts Necessary to Plead a Claim for Wages and Overtime Damages

       In view of the fact that it is Plaintiffs' burden to prove entitlement to damages to a "reasonable certainty," this Court must consider the nature of the proof required to prove such damages where, as here, plaintiffs seek unpaid wages and overtime damages.  The Second Circuit has spoken explicitly as to the level of pleading required to state a claim for overtime wages.  See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); Nakahata v. New York–Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 88 (2d Cir. 2013).

Similar to the "reasonable certainty" standard required to prove entitlement to default damages, the Second Circuit has held that a plaintiff seeking to state a claim for overtime wages must plead facts sufficient to support a "reasonable inference" that he worked more than forty hours in a given week.  See Dejesus, 726 F.3d at 90.  While such hours need not be pled with exact "mathematical precision," a plaintiff seeking overtime wages is required to draw from his "memory and experience" when pleading hours worked.  Id.  Facts thus drawn from memory must provide "sufficient detail about the length and frequency" of hours worked so as to "support a reasonable inference that [plaintiff] worked more than forty hours in a given week."  Id.  The pleading of such factual context allows a plaintiff to "nudge [his] claim 'from conceivable to plausible."  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Lundy, 711 F.3d at 114 n.7 (stating that an approximation of overtime hours worked, while "not needed in all cases," may "help draw a plaintiff's claim closer to plausibility").

With these pleading standards in mind, the Court turns to consider the issues referred to this Court for report and recommendation, i.e., whether Plaintiffs have sufficiently pled their claims under the FLSA and the NYLL, and, if so, the amount of damages to be awarded.

III.    Calculation of Plaintiffs' Wage and Hour Damages

A.    Unpaid Wages, Overtime and Liquidated Damages

Plaintiffs' wage claims and overtime claims are supported by the Complaint and declaration allegations referred to above.  Plaintiffs' declarations recall both the dates and hours worked.  They also recall their daily wage.  The Court has considered the allegations set forth above and holds that those allegations do, in fact, rise to the level of pleading required by the

Second Circuit, and are therefore sufficient for this Court to make a reasonably specific determination as to damages.

With respect to their regular wages, Plaintiffs were promised an hourly wage of $25.00. (Darmender Decl. ¶ 18; Ranjit Decl. ¶ 18.)  In line with this, they were to be paid $200 per day for eight hours of work, which computes to a rate of $25 per hour.  (Darmender Decl. ¶ 19; Ranjit Decl. ¶ 19.)  However, Darmender was only compensated $800 for his entire work period and Ranjit only received $500 for his entire work period.  (Darmender Decl. ¶ 23; Ranjit Decl. ¶ 23.)  Taking into account the compensation provided, Darmender is owed $3,900.00 in regular wages for the period January 14, 2019 to February 15, 2019 and Ranjit is owed $4,200.00 in regular wages for the same time period.

As to overtime wages, Plaintiffs are also entitled to 100% of all overtime wages owed. Plaintiffs state that they regularly worked seven days per week, anywhere from nine to twelve hours per day, throughout the course of their employment.  (Darmender Decl. ¶¶ 11-13; Ranjit Decl. ¶¶ 11-13.)  These shifts resulted in Plaintiffs working seventy-five hours per week for Defendants, thirty-five of which should have been compensated at one and one-half times their regular rate of pay.  (Darmender Decl. ¶ 14; Ranjit Decl. ¶ 14.)  Taking into account the statutes of limitation under the FLSA and the NYLL, Plaintiffs may recover unpaid overtime compensation for all work they performed for Defendants from January 14, 2019 to February 15, 2019.  Therefore, the overtime pay due to Plaintiffs is $6,168.75, as set forth below.[2]

---

[2]  The damages calculations in Plaintiff's Motion for Default Judgment and Plaintiff's Affidavit are incorrect.  The Court will recommend that damages be awarded based on the numbers calculated throughout this Report and Recommendation.

| Time Period | Number of Weeks | Hourly Rate of Pay | Overtime Owed per week | Overtime Wages Due |
|---|---|---|---|---|
| 01/14/2019-02/15/2019 | 4.7 | $25.00 | $1,312.50 | $ 6,168.75 |

Plaintiffs are also entitled to 100% in liquidated damages on their overtime compensation claims.  As such, Plaintiffs are entitled to $6,168.75 in actual overtime damages each and a like amount in liquidated damages, for a total of $12,337.50 each.

  C.  <u>WTPA Damages</u>

   Since February 27, 2015, the WTPA mandates that "[a]ny employee not provided [a wage] notice within ten business days following their first day of employment, 'may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." <u>Rodriguez</u>, 2018 WL 1335358, at *9 (quoting <u>Kim v. 511 E. 5th St., LLC</u>, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015)) (first alteration in original); <u>see also</u> N.Y. Labor. L. § 198(1-b).  Plaintiffs state that they worked a total of thirty-three days for Defendants, during which they never received written notice of their pay.  (Compl. ¶¶ 38, 53; Darmender Decl. ¶ 26; Ranjit Decl. ¶ 26.)  Applying the daily rate of fifty dollars, this amounts to $1,650.00 in damages under the WPTA.   Therefore, this Court recommends awarding Plaintiffs $1,650.00 each for Defendants' record keeping violations, pursuant to Section 195(1) of the NYLL.

   Moreover, since April 9, 2011, the WPTA also requires employers to provide employees, with every payment of wages, a statement that lists the dates of work covered by the payment of wages, the employee's and the employer's names, the address and phone number of the employer, the employee's rate of pay, "whether paid by the hour, shift, day, week, salary, piece, commission, or other," gross wages, deductions, allowances, if any, and net wages.  N.Y. Labor L. § 195(3).  "[T]he statement shall [also] include the regular hourly rate or rates of pay; the

overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  Id.  Prior to February 27, 2015, "[t]he WPTA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  Id.  After February 27, 2015, the WPTA entitles a plaintiff to recover $250 for each work day that the violation occurred, not to exceed $5,000.  See N.Y. Labor L. § 198(1-d).  Here, Plaintiffs state that throughout their employment, Defendants never provided them with wage statements or paystubs.  (Compl. ¶¶ 48, 53; Darmender Decl. ¶ 26; Ranjit Decl. ¶ 26.)  Accordingly, this Court recommends awarding Plaintiffs the statutory maximum of $5,000 each for Defendants' violation of Section 195(3) of the NYLL.

In summary, this Court respectfully recommends that Defendants be ordered to pay Darmender Singh $3,900.00 for unpaid wages, $6,168.75 for unpaid overtime wages for hours worked in excess of 40 hours per week, $6,168.75 in liquidated damages, and $6,650.00 for Wage Theft Prevention Act violations, for a total monetary award of $22,887.50.  With respect to Ranjit Singh, this Court respectfully recommends that Defendants be ordered to pay $4,200.00 for unpaid wages, $6,168.75 for unpaid overtime wages for hours worked in excess of 40 hours per week, $6,168.75 in liquidated damages, and $6,650.00 for Wage Theft Prevention Act violations, for a total monetary award of $23,187.50.

IV.    Pre-Judgment Interest

Plaintiffs seek pre-judgment interest on damages awarded for their NYLL claims.  (Pl. Mem. of Law 16.)  "Prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA because the plaintiff is considered to have been appropriately compensated through the award of liquidated damages."  Nam v. Ichiba Inc., No. 19-cv-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021) (citing

cases).  "The NYLL, however, explicitly provides that a successful plaintiff should receive both liquidated damages and prejudgment interest."  Id. (citing N.Y. Labor Law § 198(1-a)) (additional citations omitted).  Accordingly, to avoid double recovery, courts calculate pre-judgment interest only on the compensatory damages awarded under the NYLL, not on the liquidated damages.  See id. (citation omitted).  Here, Plaintiffs may recover pre-judgment interest on their unpaid regular and overtime wages, which, as discussed above, total $10,068.75 for Darmender and $10,368.75 for Ranjit.

Pre-judgment interest on NYLL damages is calculated at a rate of nine percent per annum.  See N.Y. C.P.L.R. § 5004.  In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id. § 5001(b).  "Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as 'the earliest ascertainable date the cause of action existed,' or a reasonable intermediate date if damages were incurred at various times."  Nam, 2021 WL 878743, at *9 (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).  The intermediate date of Plaintiffs' employment is January 29, 2019.

Interest on Darmender's NYLL damages award accumulates at a rate of $2.48 per day (($10,068.75 x 9%)/365 days).  Using January 29, 2019 as the midpoint, there are 883 days from the midpoint to the date of this Report and Recommendation.  Accordingly, this Court recommends that Ranjit be awarded $2,189.84 in pre-judgment interest, with additional interest to be calculated at a rate of $2.48 per day through the date of judgment herein.

With respect to Ranjit, interest accumulates at a rate of $2.56 per day (($10,368.75 x 9%)/365 days).  As stated above, there are 883 days from the midpoint of Plaintiffs' employment

15

to the date of this Report and Recommendation.  Accordingly, this Court recommends that Ranjit be awarded $2,260.48 in pre-judgment interest, with additional interest to be calculated at a rate of $2.56 per day through the date of judgment herein.

V.      Post-Judgment Interest

Plaintiffs also request an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, which must be applied to "any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961; see also Khurana, 2017 WL 1251102, at *17.  Accordingly, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered.  See 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); see also Schipani v.McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

V.      Attorney's Fees and Costs

Both the FLSA and the NYLL provide for the recovery of reasonable attorney's fees by successful plaintiffs.  See 29 U.S.C. §216(b); N.Y. Labor L. §§198(1-a), (1-d).  The statutes similarly allow prevailing plaintiffs to recover costs from defendants.  See 29 U.S.C. §216(b); N.Y. Labor L. §663(1).  Counsel seeking such awards bear the burden of supporting their claims of hours expended by submission of accurate, detailed and contemporaneous time records.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

When determining an award of attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the

reasonable number of hours required by the case." Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)).  The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. ex rel. Winn., 559 U.S. 542, 551 (2010). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 184, 190–91.

The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983).  Additionally, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012).  This Circuit requires contemporaneous billing records for each attorney.  See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011).

Plaintiffs seek $24,466.50 in attorney's fees and $684.19 in costs and have submitted an affirmation from their attorney, dated December 5, 2020, as well as billing records.  (See DE [16].)  The affirmation and the billing records submitted provide an itemization of time and

services expended in this case, reflecting time spent, tasks performed as well as costs incurred.

See id.  The records reflect that Plaintiffs' attorneys spent a total of 52.63 hours working on this

case at billing rates ranging from $150.00 to $550.00 per hour.  See id.  The Court finds the

hourly rates and the hours expended to be excessive for a simple default proceeding.  See

Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328 (E.D.N.Y. 2014) ("To determine

reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule, which states

that a district court should generally use the prevailing hourly rates in the district where it sits.")

(collecting cases);  see also Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL

1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on

the nature of the action, extent of legal services provided and experience of the attorney, hourly

rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for

senior associates, and $100 to $200 for junior associates") (collecting cases); Ferrara v.

Professional Pavers Corp., No. 11-CV-1433, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013)

("Recently, reasonable hourly rates in this district have ranged from approximately $200 to $400

for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals").

     First, an hourly rate of $550.00 per hour for Mr. Troy is well beyond the hourly rates

typically awarded to partners in this district in a simple wage and hour default action.  Given the

simplicity of this action, the Court finds that $300.00 per hour is an appropriate award for Mr.

Troy.  Moreover, Ms. Kilaru, who is identified as a "Managing Clerk," has only been a lawyer

for approximately five years, having graduated law school in July 2016.  (Troy Decl. ¶ 35.)

Plaintiffs seek $200 per hour for her services; however, given that she is considered a junior

associate, this Court recommends reducing her hourly rate to $150.00 per hour.  Finally,

Plaintiffs seek $150.00 per hour for Ms. Huang, identified as a "CPA Accountant."  Accountants

are typically awarded hourly rates consistent with those set for legal assistants, which range from $70.00 to $100.00.  See Silva v. M. Beyer Contracting, Ltd., No. 10-CV-4951, 2011 WL 13377571, at *8 (E.D.N.Y. Nov. 18, 2011) (awarding $75.00 per hour for paralegals and accountants in a default FLSA action).  Accordingly, this Court recommends reducing Ms. Huang's hourly rate to $75.00 per hour.

Second, the hours incurred here – 52.63 – are excessive for a simple default in a wage and hour case, which is the primary focus of Plaintiffs' counsel's legal practice.  This Court has presided over many wage and hour default cases and the hours spent by counsel are typically half of what Plaintiffs' attorneys assert to have incurred.  "A district court may exercise its discretion and use a percentage reduction as a practical means of trimming fat from a fee application, and the Supreme Court has been careful to note that only those hours reasonably expended are to be awarded."  McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006).  Here, this Court recommends an across-the-board reduction of twenty percent of all hours billed as excessive.  This reduces the hours sought to 42.1 which, while still higher than a typical wage and hour default, are more reasonable than the hours sought by Plaintiffs.  Taking into account the foregoing reductions, this Court recommends that Plaintiffs be awarded $10,974.00 in attorney's fees.

Finally, as to costs, Plaintiffs seek a total of $684.19.00 in litigation expenses.  While not itemized in any way, Plaintiffs' memorandum of law in support of their motion for attorney's fees and costs states that the expenses incurred include the court filing fee, service of process fees, and fees for research, postage, and printing.  (Pl. Mem. of Law in Supp. of Mot. for Attorney's Fees 6.)

19

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested."  Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)).  Here, the Court can take judicial notice that the filing fee for commencing this action is $400.00.  With respect to the other costs sought to be recovered, Plaintiffs have failed to submit sufficient invoices, receipts, or other documentary proof of such costs and disbursements.   Accordingly, this Court respectfully recommends that Plaintiffs be awarded costs in the amount of $400.00, solely representing the court filing fee.

<u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully recommended that Plaintiffs' motion for default judgment be granted and that damages be awarded to Plaintiff Darmender Singh as follows: (1) unpaid wages in the amount of $3,900.00; (2) unpaid overtime compensation in the amount of $6,168.75; (3) liquidated damages in the amount of $6,168.75; (4) $6,650.00 in damages for violations of the WPTA; (5) pre-judgment interest through the date of this Report and Recommendation in the amount of $2,189.84, with additional interest to be calculated through the date of judgment herein at a rate of $2.48 per day and (6) post-judgment interest, to be calculated by the Clerk of the Court, pursuant to 28 U.S.C. § 1961, for a total damages award of $25,077.34.

The Court further recommends that Plaintiff Ranjit Singh be awarded damages as follows: (1) unpaid wages in the amount of $4,200.00; (2) unpaid overtime compensation in the amount of $6,168.75; (3) liquidated damages in the amount of $6,168.75; (4) $6,650.00 in

damages for violations of the WPTA; (5) pre-judgment interest through the date of this Report and Recommendation in the amount of $2,260.48, with additional interest to be calculated through the date of judgment herein at a rate of $2.56 per day and (6) post-judgment interest, to be calculated by the Clerk of the Court, pursuant to 28 U.S.C. § 1961, for a total damages award of $25,447.98.

Finally, the Court recommends that Plaintiffs' motion for attorney's fees be granted in part and denied in part and that Plaintiffs be awarded $10,974.00 in attorney's fees and costs in the amount of $400.00, for a total monetary award of $61,899.32.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known address(es) and to file proof of service on ECF by July 2, 2021.  Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated:  Central Islip, New York
       June 30, 2020

                              /s/ Anne Y. Shields
                              ANNE Y. SHIELDS
                              United States Magistrate Judge